UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Karyl Krug, | |
| Plaintiff, | 2:14-cv-01320 JWS |
| vs. | ORDER AND OPINION |
| Maricopa County Superior Court, *et al.*, | [Re: Motion at Docket 4] |
| Defendants. | |

## I.  MOTION PRESENTED

At docket 4 defendants Maricopa County Superior Court ("Superior Court"), Karen Westover ("Westover"), Douglas Rayes ("Rayes"), Lori Ash ("Ash"), and Diane Alessi ("Alessi")[1] move, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing plaintiff Karyl Krug's ("Krug") Complaint. Krug responds at docket 5. Defendants reply at docket 6. Oral argument was not requested and would not assist the court.

## II.  BACKGROUND

Krug and Alessi worked together as Superior Court Staff Attorneys assigned to criminal law cases. At times, Alessi critiqued Krug's work and revised it without Krug's

---

[1]Fictitious individuals John Doe Westover, Jane Doe Rayes, John Doe Ash, John Doe Alessi, and Does I-X are also named in the Complaint.

knowledge. Because Alessi was not an attorney, Krug believed that Alessi was engaging in the unauthorized practice of law by supervising her work. Further, Krug believed that Alessi was committing fraud by not disclosing that she was not an attorney in a specific grant request, at CLE presentations, a judicial education training course she taught, and unspecified advertising material. Krug contacted the State Bar of Arizona ("State Bar") for ethical advice on how to handle this situation. The State Bar informed her that she had a mandatory duty to report her concerns to the State Bar, and she did so.

Alessi also allegedly called Krug passive-aggressive names and belittled her footwear, clothes, and the way she interacted with judges. Krug wrote Alessi an email informing her to stop supervising her work, stop harassing her, and "that she did not appreciate being included in" Alessi's fraud attempts.[2]

Krug alleges that Westover (Krug's supervisor), Judge Douglas Rayes (also Krug's supervisor), and Ash (Superior Court Counsel) gave Alessi the authority to determine whether Krug would be fired.[3] She then alleges that Westover, Rayes, and Ash terminated Krug for reporting Alessi to the State Bar and for the email she sent to Alessi.[4] Since her termination, Krug has applied for up to 100 jobs, but has received few interviews. Krug believes that her former employers provided her with negative references, and this is why she has received few interviews. Krug did receive an interview for a job with the Maricopa County Attorney's Office, but did not receive the job "because her former employers blackballed her from the position" in retaliation for the statements she made as a Staff Attorney.

Krug's Complaint alleges two § 1983 First Amendment retaliation causes of action. Claim I alleges that each defendant terminated Krug in retaliation for First-

---

[2]Doc. 1 at 11 ¶¶ 79-80.

[3]*Id*. at 11 ¶¶ 81-82

[4]*Id*. at 12 ¶¶ 85-86.

Amendment-protected speech. Claim II apparently alleges that each defendant blackballed Krug in retaliation for First-Amendment-protected speech.[5] Claim III seeks punitive damages. Defendants move to dismiss Krug's Complaint in its entirety.

### III.  STANDARD OF REVIEW

Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims. In reviewing such a motion, "[a]ll allegations of material fact in the Complaint are taken as true and construed in the light most favorable to the nonmoving party."[6] To be assumed true, the allegations, "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."[7] Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[8] "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[9]

To avoid dismissal, a plaintiff must plead facts sufficient to "'state a claim to relief that is plausible on its face.'"[10] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[5] The Complaint is ambiguous as to whether Krug's allegation of retaliation via negative references and "blackballing" falls under Claim I, Claim II, or both. The text of Claim I and Claim II omits any reference to this form of retaliation; both refer only to retaliatory termination. Krug generally alleges retaliatory blackballing in the "Factual Allegations" section of the Complaint, however. Doc. 1 at 12 ¶¶ 87-93. For clarity's sake, the court will construe Krug's inartfully pleaded Complaint as alleging retaliatory termination under Claim I and retaliatory blackballing under Claim II.

[6] *Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[7] *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

[8] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[9] *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

defendant is liable for the misconduct alleged."[11] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[12] "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[13] "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[14]

## IV. DISCUSSION

### A. Krug's Complaint Contains Only Two Substantive Claims

Defendants argue that Krug's hostile work environment and failure to supervise claims should be dismissed.[15] Krug responds by stating that her Complaint does not contain such claims. Instead, her hostile work environment and failure to supervise allegations merely bolster her two retaliation claims.[16] In reply, defendants withdraw their arguments regarding these two non-existent claims.[17]

### B. Claims Against the Superior Court

Defendants argue that Krug's claims against the Superior Court must be dismissed because the Superior Court is a non-jural entity that cannot be sued. According to Rule 17(b)(3), the Superior Court's capacity to be sued is determined by the law of the state where the court is located. Thus, Arizona law governs whether the

---

[11]*Id.*

[12]*Id.* (citing *Twombly*, 550 U.S. at 556).

[13]*Id.* (quoting *Twombly*, 550 U.S. at 557).

[14]*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see also Starr*, 652 F.3d at 1216.

[15]*See* Doc. 4 at 4.

[16]Doc. 5 at 9.

[17]Doc. 6 at 9.

Superior Court can be sued. Under Arizona law, "a government entity may be sued only if the legislature has given that entity the power to be sued."[18] Defendants assert that no statute confers upon the Superior Court the power to be sued, which Krug does not dispute. Krug's claims against the Superior Court will be dismissed.

Krug argues that even if the Superior Court is a non-jural entity she should be allowed to amend her Complaint to substitute Maricopa County for the Superior Court as a defendant. Defendants respond by stating that defendants' counsel does not represent Maricopa County and, therefore, does not respond on its behalf.[19] Krug's request to name Maricopa County would be futile, however, because the Superior Court is part of the judicial branch of the State of Arizona, not of Maricopa County.[20] Further, Krug's potential request to name the State of Arizona would also be futile because the State of Arizona is not a "person" that can be sued under Section 1983.[21]

**C.     Claims Against the Individual Defendants**

Krug names Westover, Rayes, Ash, and Alessi as individual defendants. She alleges that Westover, Rayes, and Ash terminated her for exercising her First Amendment rights[22] and that unspecified "former employers" gave negative employment references to her potential future employers.[23]

---

[18]*Payne v. Arpaio*, No. CV 09-1195-PHX-NVW, 2009 WL 3756679, at *4 (D. Ariz. Nov. 4, 2009) (citing *Schwartz v. Superior Court*, 925 P.2d 1068, 1070 (AZ Ct. App. 1996)).

[19]Doc. 6 at 9.

[20]*See State v. Superior Court In & For Pima Cnty.*, 420 P.2d 945, 951 (Ariz. Ct. App. 1966), *vacated on other grounds*, 430 P.2d 408 (Ariz. 1967) ("There is only one superior court in the State of Arizona.") (citing Arizona Constitution, article 6, section 13).

[21]*See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983.").

[22]Doc. 1 at 12 ¶¶ 85-86.

[23]*Id.* at ¶¶ 92-93.

**1.     Retaliatory termination claims**

Defendants argue that Krug fails to state plausible claims of retaliatory termination against any of the individual defendants.[24] Specifically, defendants argue that Krug fails to sufficiently allege that Westover, Ash, and Alessi terminated her or that Rayes, who defendants concede had authority to terminate Krug's employment, knew about Krug's allegedly protected speech. With regard to Westover, Ash, and Alessi, Krug responds by arguing that each of those defendants "jointly allowed Defendant Alessi to make the decision whether Plaintiff should be fired, and then all the Defendants collectively terminated Plaintiff."[25] With regard to Rayes' knowledge of Krug's allegedly protected speech, Krug concludes without explanation or citation to the Complaint that "[e]ach Defendant was aware of Plaintiff Krug's reporting the fraud."

Even when viewing the Complaint in the light most favorable to Krug, it fails to state a claim against Westover, Ash, or Alessi for retaliatory termination. Krug alleges that it was Alessi who was given the authority to determine whether Krug would be terminated—not Westover, Rayes, or Ash.[26] Puzzlingly, the Complaint does not allege that Alessi ever exercised this discretion. Instead, the Complaint alleges that Westover, Rayes, Ash, and the Superior Court itself terminated Krug. Thus, Krug does not allege that Alessi terminated her. Krug's retaliatory termination claim against Alessi will be dismissed.

Further, even accepting as true Krug's allegation that Westover, Reyes, and Ash collectively terminated Krug's employment, the Complaint's allegation that this was retaliatory is entirely conclusory. Krug alleges that she engaged in protected speech, that she was terminated, and concludes that she was terminated in retaliation for her speech. The only factual support she provides for her conclusion is the timing of her

---

[24]Doc. 4 at 8-9.

[25]Doc. 5 at 10.

[26]Doc. 1 at 11 ¶ 81.

termination. The Complaint alleges that "a few days" after Westover learned that Krug reported Alessi to the State Bar Westover informed Krug that she would likely be fired.[27] Further, the Complaint alleges that Krug was fired "a few hours" after she wrote her email to Alessi. The mere fact that Krug was terminated around the same time as her allegedly protected speech does not sufficiently allege plausible retaliation. Because the Complaint merely pleads facts that are consistent with Westover's, Reyes', and Ash's liability for retaliatory termination, and not facts that move her retaliation claims "across the line from conceivable to plausible,"[28] Krug's retaliatory termination claims will be dismissed.

This conclusion is bolstered by the Complaint's failure to address an obvious alternative explanation for Krug's termination. The email that Krug wrote to Alessi, which according to Krug immediately proceeded her termination, contained language highly inappropriate for the workplace. In that email Krug asserted that she had "had it" with Alessi, whom she described as "unbelievably rude" and a "terrible teacher." She then further disparaged Alessi, stating that someone named Donna had told her "more in a couple hours on the phone than [Alessi had] in three months" and that someone else named Michael Minicozzi had "better explained the PCR process" than Alessi ever had. She concluded her email with the following sentence: "Don't ever address me like a retarded child again."[29]

Krug argues that the court should not consider this email in the context of Rule 12(b)(6) because it is extraneous to the Complaint. Defendants counter that the court can consider the email because the Complaint references it in several locations,[30]

---

[27]Doc. 1 at 15 ¶ 113.

[28]*Twombly*, 550 U.S. at 570.

[29]Doc. 4-1 at 3.

[30]*See* Doc. 4 at 11 (citing Doc. 1 at 11 ¶ 79-80; *id.* at 12 ¶ 84).

and Krug does not dispute its authenticity. Because Krug neither denies that her Complaint refers to the email nor disputes its authenticity, the court may consider it.[31]

On the facts alleged, Krug was terminated shortly after sending this inappropriate email. To paraphrase *Iqbal*, as between this obvious explanation for her termination and the invidious retaliation that Krug asserts, retaliation is not a plausible conclusion.[32]

### 2. Retaliatory blackballing claims

Krug's retaliatory blackballing claims against the individual defendants are also devoid of meaningful factual content. The allegations that comprise this claim are found exclusively in paragraphs 87 through 93 of the Complaint. Although these paragraphs allege that Krug was blackballed in retaliation for her allegedly protected speech, Krug does not allege with certainty that any bad references were given; she alleges "[u]pon information and belief" that she did not receive a position with the Maricopa County Attorney's Office or other prospective employers because "her former employers" blackballed her and provided these employers with negative reviews in retaliation for her protected speech. Even more problematic for Krug's claims against the individual defendants, the Complaint does not connect any specific individual defendant with any of these actions. The Complaint merely asserts that the actions were perpetrated by "her former employers," generally. This is insufficient to state a claim against any individual defendant. Krug's claims for retaliatory blackballing against the individual defendants will be dismissed.

---

[31] *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002)).

[32] 556 U.S. at 682.

## **V.  CONCLUSION**

Based on the preceding discussion, defendants' motion to dismiss at docket 4 is GRANTED.  Plaintiff's Complaint is DISMISSED.

DATED this 10th day of December 2014.


                    /s/  JOHN W. SEDWICK
            SENIOR UNITED STATES DISTRICT JUDGE